PATRICK K. MILLAY *vs.* OTIS WHITNEY *et al.*

*Construction of authority given an agent by telegraph.*

A telegram of the following tenor, viz: "Boston, Nov. 11, 1872. To Otis Whitney:—Get cargo bonded; will hold bondsman harmless and come down if necessary. See Spaulding. C. G. Underwood,—" is not sufficient to authorize said Whitney to sign Underwood's name to a receipt for the cargo, (which had been attached upon a writ against the Great Falls Ice Co.,) acknowledging the property to be in that corporation, and agreeing to deliver it to the sheriff who had attached it upon the writ against said corporation.

Millay v. Whitney.

ON EXCEPTIONS.

ASSUMPSIT upon this receipt; "Received of Patrick K. Millay, three hundred and twelve tons of ice, the property of the Great Falls Ice Company of Washington, D. C., and which was attached by him on a writ in favor of Edward K. Harding against said Great Falls Ice Company, and which we promise to return to the said Millay or to the officer holding the execution, within thirty days after judgment, without demand. Liability on this receipt limited to three hundred and twelve dollars. November 12, 1872.

C. G. UNDERWOOD by OTIS WHITNEY.

OTIS WHITNEY."

The occasion of the giving of this receipt, which was written by J. W. Spaulding, Esq., after he had been consulted by Whitney, was that the ice mentioned had been attached upon Mr. Harding's writ against the Great Falls Ice Company. The testimony showed that the ice belonged to Mr. Underwood, who was then shipping it to that corporation.

The defendant Underwood contended that Whitney had no authority for such a use of his name, and objected to its reception in evidence against him. The only authority shown for so executing it was the telegram recited in the head-note and opinion, and the advice of Mr. Spaulding. After the introduction of the despatch, the presiding justice admitted the receipt and the defendants excepted, the plaintiff having obtained a verdict for $312.

*W. Gilbert*, for the defendants.

*Tallman & Larrabee*, for the plaintiff.

DANFORTH, J. This is an action upon a receipt given for property attached upon a writ. Underwood, one of the defendants, objects to the admission of the paper offered as a receipt, on the ground that it was not signed by him, nor with his consent. It appears that his name was put to the instrument by Whitney, the other defendant, whose only authority for so doing is found in a telegram sent from Boston by Underwood to Whitney at Rich-

mond, of the following tenor, viz:—"Boston, Nov. 11, 1872. To Otis Whitney. Get cargo bonded; will hold bondsman harmless, and come down if necessary. See Spaulding.

C. G. UNDERWOOD."

Upon the introduction of this telegram the objection to the receipt was overruled, and it was admitted in evidence. To this ruling exceptions are filed. It is now contended that the authority of Whitney was a question of fact for the jury and that the verdict has settled it in favor of the plaintiff. But it does not appear to, nor could it properly, have been left to them. The act of Whitney has no foundation upon which to rest except this telegram, which is legally a written instrument. There is no other proof connecting Underwood with the receipt. The proper construction to be given to this telegram, as to all writings, is solely a matter of law. The question then here presented, is whether this telegram fairly construed, under the circumstances of the case, authorized the act of Whitney in signing Underwood's name. We think it did not. It is conceded that the cargo to be bonded is the same property as the ice attached, for which the receipt was given. But a direction to bond property is one thing. A direction to sign one's name to an accountable receipt for that property is another, and in this case a very different, thing. Whatever may be understood by bonding, it can hardly be construed as an admission by Underwood that he had no title to the ice, or a direction to have the paper so made as to estop him from setting up such a title. That he had an interest of some kind in the ice would seem to be evident and no act or direction of his, as shown by the case, is inconsistent with the claim of ownership which he now sets up; and yet the act of Whitney, if valid, estops him from asserting title in himself.

So, too, holding a "bondsman harmless" is not the same contract as would result from putting one's own name to a bond or other like instrument. It is of no importance that the one may impose a greater or less liability than the other, or that either may equally accomplish the end intended. The party to be bound has his right

to a choice of methods, or to refuse to enter into the covenant—his consent, and that alone, binds him to the agreement.

It is suggested that the words "See Spaulding" are to be understood as an instruction to take his advice, and give such security as he might direct. This would, undoubtedly, have been a safe course had the defendant seen fit to have adopted it, and have given such information as would have enabled Mr. Spaulding to have acted understandingly. But there is nothing in the case, much less in the telegram, to show that any such intention existed, or that Mr. Spaulding in making the papers so understood it. It may be fair to presume that Whitney was to go to him to get the proper papers made, and that he prepared such as from the information he had, the case required; but it cannot be presumed that this direction was for the purpose of having any liability imposed upon the person giving it other, or different from, what his own writing had specifically pointed out and authorized. In a word, the telegram gave specific directions to Whitney as to what he was to do, and by its own terms fixed the liability to be assumed by the sender. Those directions were not followed, but a different liability was attempted to be imposed.

It is further said that Underwood was present at the trial, and did not deny upon the stand the authority of Whitney. Why should he? That authority, whatever it was, was in writing, and could not be changed in any respect by parol testimony. If he had offered his own, or any other, testimony for this purpose it would very properly have been excluded.

*Exceptions sustained.*

APPLETON, C. J., DICKERSON, BARROWS and VIRGIN, JJ., concurred.